## Chester G. Gifford, Plaintiff-Appellant, v. Elmer Rich, Sr., et al., Defendants-Appellees.

### Gen. No. 50,266.

First District, First Division.

April 26, 1965.

Dixon, Todhunter, Knouff & Holmes, of Chicago, for appellant.

Leibman, Williams, Bennett and Baird, of Chicago, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an interlocutory appeal from an order which (1) denied plaintiff's motion for a temporary injunction to restrain defendants from exercising their purported rights under a stock repurchase agreement, and (2) vacated a previously entered partial restraining order.

The plaintiff, until termination of his employment, effective December 29, 1964, was president of the defendant Simoniz Company. The individual defendants are all directors of Simoniz, all but two are also officers of Simoniz, and they all directly, beneficially or otherwise control in the aggregate in excess of ⅔ of all voting shares of Simoniz.

Plaintiff's verified 2-count amended complaint seeks an injunction, an accounting and damages. This appeal concerns only whether temporary injunctive relief can be granted upon the allegations of Count I, in which plaintiff seeks equitable relief permanently enjoining defendants from repurchasing plaintiff's 20,000 shares of stock of the defendant company. A stock repurchase agreement between plaintiff and defendant Simoniz executed contemporaneously with plaintiff's employment by Simoniz "in a senior executive capacity," provides that "Simoniz shall have the right and obligation to purchase" these shares at book value, within sixty days after plaintiff's termination of employment by defendant Simoniz.

On December 1, 1964, plaintiff filed his original complaint and on December 18, 1964, moved for a temporary injunction. On December 28, 1964, plaintiff filed an amended motion for temporary injunction restraining defendants "from taking any steps or action

whatsoever to acquire plaintiff's common shares of defendant Simoniz Company." On December 30, 1964, an order was entered granting leave to defendants to "answer and file counter-affidavits to plaintiff's amended motion for temporary injunction"; and pending hearing of the motion, the defendants were "restrained from making a demand on The First National Bank of Chicago, Illinois, for the shares of stock of Simoniz Company, now held by such Bank, under plaintiff's pledge, as collateral for a $190,000 loan made by plaintiff from the Bank."

The order also granted leave to plaintiff to file an amended complaint. On January 4, 1965, plaintiff filed his verified amended complaint. After a hearing on January 6, 1965, the court ordered the status quo to be maintained under the December 30 order, ordered plaintiff to post a $10,000 "injunction bond," with surety, and referred the matter to a master in chancery to take testimony and report his conclusions "on plaintiff's motion for temporary injunction."

On January 13, 1965, after a hearing, the master filed his written report, recommending "that the amended motion of plaintiff for a temporary injunction be denied by the court," to which plaintiff filed written exceptions. On January 20, 1965, the court approved the master's report, denied plaintiff's motion for a temporary injunction, and vacated the "restraining order" of December 30, 1964. This interlocutory appeal by plaintiff followed, and on January 25, 1965, this court, after argument, denied plaintiff's motion to stay the force and effect of the order of the Circuit Court of January 20, 1965.

█ █  The sole question on appeal is whether the trial court abused its discretion in denying plaintiff temporary injunctive relief. A party is not entitled to a preliminary injunction as a matter of right, and whether it will be granted is left to the sound legal

discretion of the court, to be exercised in view of the facts of the particular case. The showing should be made that there is a probability of ultimate success on the part of the party in favor of whom the injunction is asked, and if the plaintiff can have no ultimate relief at the hearing of the case on its merits he should not be granted an interlocutory injunction. Absolute certainty of plaintiff's ultimate success is not required, provided the complaint makes out a prima facie case for final relief. 21 ILP, Injunctions, § 12, pp 528, 529.

Since no answer was filed to the amended complaint, we consider only the amended complaint in our examination of this record to determine whether the trial court abused its discretion in denying the plaintiff temporary relief. The well pleaded allegations of fact must be taken as true for the determination of this appeal. (Dunne v. County of Rock Island, 273 Ill 53, 57, 112 NE 342 (1916); H. K. H. Development Corp. v. Metropolitan Sanitary Dist. of Greater Chicago, 47 Ill App2d 46, 196 NE2d 494 (1964).) It is essential that the amended complaint allege sufficient facts to make a prima facie showing of the right to final relief sought. If it appears from the amended complaint that plaintiff will not be entitled to the permanent injunction sought, a temporary injunction should not be granted. Baird v. Community High School Dist. No. 168, 304 Ill 526, 529, 136 NE 671 (1922); Tidd v. General Printing Co., 257 Ill App 596, 602 (1930); 43 CJS, Injunctions, § 19, p 433.

The amended complaint, in substance, alleges the following. As an important inducement to plaintiff to accept employment as president of Simoniz Company, a position he has held at all times relevant to this cause, he was given the opportunity to and did purchase 20,000 Class A (voting) shares of Simoniz Company, out of a total of 749,760 of these shares issued

and outstanding, thus affording him the opportunity to make a substantial capital gain. Plaintiff and defendant Simoniz Company were also parties to a written stock repurchase agreement, which provided, in part, that upon the termination of plaintiff's employment with Simoniz, Simoniz had the right and obligation to purchase from him, within 60 days, all of plaintiff's shares in Simoniz, at book value as defined in the agreement. Under the written employment agreement, Simoniz could discharge plaintiff for "no cause or reason whatsoever," upon 90 days' notice. Plaintiff financed the purchase of these shares by pledging them as collateral security for a loan to him from The First National Bank of Chicago in the principal amount of $190,000.

The amended complaint alleges that for more than a year prior to the filing of the instant action, Simoniz has been exploring the possibilities of sale of the company, to buyers named in the amended complaint, and plaintiff has been chiefly responsible for all negotiations in connection with such possibilities. These negotiations have been benefited and aided by plaintiff's conducting them. Potential buyers were interested in a purchase partly because plaintiff was the chief operating officer of Simoniz, and because he might occupy the same position with any buyer. After devoting over a year to negotiating a sale of defendant Simoniz, a sale to one buyer or another was almost at the point of consummation, when plaintiff was abruptly dismissed without cause. He was informed of his dismissal and the defendants' intention to exercise their purported rights under the repurchase agreement by telephone while in London on a business trip for defendant Simoniz. The demand for plaintiff's stock was made for its book value, a price substantially less than the price which any genuinely interested buyer would be willing to pay for the shares. One of the pur-

poses of discharging plaintiff was to deprive him of an opportunity to make a substantial capital gain, and to appropriate this opportunity to defendants.

The amended complaint also alleges that since plaintiff's discharge, defendants wrongfully carried on further negotiations with potential buyers, intending to sell control of Simoniz in such a way as to deny plaintiff, as a minority shareholder, his just share of the proceeds. The defendants, by this course of conduct, intend to appropriate for the benefit of the controlling shareholders these corporate opportunities to the detriment of plaintiff as a minority shareholder. If defendants succeed in acquiring plaintiff's shares, the result would be to deprive him of valuable and unique rights as a shareholder, Simoniz not being a publicly held corporation and its shares not traded on any exchange or recognized market, and also deprive him of the promised capital gain should an advantageous sale be made in the future. Also, The First National Bank of Chicago, where the 20,000 shares are pledged as collateral, will yield to a demand defendants will make to transfer the shares to them, if there is no court order restraining defendants from making such demand. Without the protection of an applicable order, it is alleged, the bank will not agree to any further extension of plaintiff's loan, and the plaintiff would be unable to pay in full, pay any deficiency, or refinance this loan. Allowing defendants to repurchase these shares prior to a determination of this cause on the merits, would permit defendants to exert unfair advantage and duress on the plaintiff in this litigation.

Plaintiff prays for a temporary injunction, "to be made permanent upon a hearing of this cause," to restrain defendants from taking any further steps to enforce any of their alleged rights under the stock repurchase agreement; to restrain defendants from

taking steps to repurchase plaintiff's shares at book value or any price other than the full and fair value of such shares; to restrain defendants from transferring control of Simoniz unless it is done in such a manner as will result in all shareholders of Simoniz, including plaintiff, participating in the proceeds of the transfer equally in proportion to the number of shares held by each. The amended complaint also prays that an accounting be made to plaintiff in the event of any transfer of control of defendant Simoniz, whenever completed, and for a judgment against defendants for damages suffered by plaintiff as a result of the acts of defendants complained of, and for such other relief as may be just and equitable.

Count II of the amended complaint, alleging "an unlawful combination and conspiracy," and praying for $1,500,000 in damages, is not involved in the present appeal.

Plaintiff states, "The prime equitable relief he [plaintiff] seeks in his Amended Complaint is a permanent injunction *forever* barring these defendants from acquiring his 20,000 shares. . . ." Plaintiff does not contend that defendants did not fulfill the technical prerequisites prescribed in the repurchase agreement. There is no contention that this repurchase agreement is invalid per se. Illinois cases have held similar contracts to be valid (Douglas v. Aurora Daily News Co., 160 Ill App 506, 510 (1911); People v. Galskis, 233 Ill App 414 (1924); 13 ILP, Corporations, § 142, p 363; 18 CJS, Corporations, § 391, p 926), and specifically enforceable (Arentsen v. Sherman Towel Service Corp., 352 Ill 327, 185 NE 822 (1933)). The amended complaint does not allege that any fraud, oppression or unfair conduct entered into the making of the contract, that plaintiff did not have full knowledge of its provisions, or that there was not adequate consideration. (Arentsen v. Sherman Towel Service

411

Corp., 352 Ill 327, 339, 185 NE 822.) Plaintiff asserts, "The basic issue is whether Simoniz 'is seeking to exercise a right which [it] has, but which [it] should not be permitted to exercise.' This is the issue that must be preserved until there is a trial on the merits—and can only be preserved by the continuation of temporary injunctive relief."

We consider the statements made in Lawrence v. Sudman, 70 F Supp 387 (1945), at page 394, to be persuasive here:

"There is no ambiguity or restriction in the wording of the agreements [option to repurchase shares and employment agreements]. They contemplated the right to exercise the option upon the termination of the seller's employment 'in any manner or for any reason whatsoever.' *These words do not preclude the right to buy even with a profit motive, or with any motive.* They do not limit the right of the corporation, or of the defendants acting for it, to terminate the employment in any manner or for any reason. There was not written in them that such termination must be for cause. Nor could it be implied. . . . *Their right to hold their stock was as insecure as their employment. Both were subject to termination without reason, and without limitation* . . . . [Defendants] were majority stockholders when the option was made and by it they were given the right to exercise the option whether the prospects of the company were good or bad, whether they planned to continue the corporate entity or dissolve it. In fact, *the option as it is written, gave the defendants the right,* acting for the corporation, *to discharge plaintiffs solely for the purpose of obtaining their stock* . . . ." [Emphasis supplied.]

■ We conclude that if the 20,000 shares are repurchased, and the defendants transfer them or sell the assets of Simoniz, and the merits of any litigation are resolved in favor of plaintiff, the loss suffered by plaintiff could be computed with reasonable certainty. Therefore, the amended complaint does not show that a refusal to grant permanent injunctive relief will work an irreparable injury to plaintiff. Since the amended complaint does not make out a prima facie case for a permanent injunction, the "prime" equitable relief sought, a temporary injunction should not be granted.

Nothing said in this opinion is to be construed as a determination by this court of the merits of the amended complaint as to any other action or remedy which plaintiff may seek to pursue. We hold only that the amended complaint does not show that the chancellor abused his discretion in denying temporary injunctive relief.

For the reasons given, that part of the order appealed from is affirmed.

Affirmed.

BURMAN P. J. and KLUCZYNSKI, J., concur.