Hill BLACKETT, Jr., Plaintiff,

v.

CLINTON E. FRANK, INC., a Delaware
corporation, and Clinton E. Frank,
Defendants.

No. 72 C 29.

United States District Court,
N. D. Illinois, E. D.

July 19, 1974.

A. Bradley Eben, and Arthur T. Susman, Orlikoff, Prins, Flamm & Susman, Chicago, Ill., for plaintiff.

George A. Platz, III, Sidley & Austin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The plaintiff in the instant action seeks to redress alleged violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and the rules and regulations of the Securities and Exchange Commission promulgated thereunder.

The plaintiff, Hill Blackett, has been employed in the advertising business and since approximately September 1954 has served as an employee, officer or director of defendant, Clinton E. Frank, Inc. ("CEF"), starting in the capacity of accountant executive and ultimately being elected as Chairman of the Board of Directors of CEF, in which capacity he served until approximately February 17, 1971.

The defendant CEF is a corporation organized in 1949 pursuant to the laws of the State of Delaware and maintains its corporate offices in Chicago, Illinois. CEF allegedly has been engaged in operating an advertising agency and in 1970 was reported by a trade journal to be ranked by value of gross billings as the 26th largest such agency. As of April 30, 1971 CEF has allegedly 722,650 shares of common stock as its sole authorized, issued and outstanding stock; these shares were allegedly being held by approximately 63 stockholders.

The defendant, Clinton E. Frank ("Frank"), who serves CEF in the capacity of Chairman of the Executive Committee, Chief Executive Officer and Director of CEF, as of May 31, 1971 beneficially owned 312,000 shares of common stock of CEF representing 43.-2% of the outstanding shares of CEF.

The plaintiff in the instant complaint alleges, *inter alia*, the following facts:

1. The defendant Frank's stock ownership constitutes a working control of CEF and since 1953 by virtue of such stock position Frank dominated and controlled the business affairs of CEF. The plaintiff has been a director and Chairman of the Board of Directors of CEF continuously from 1964 to February 17, 1971 at which time he was summarily and illegally removed from said office by Frank without cause or justification. Plaintiff was most recently so elected in 1970 to hold such position for a term as provided by the by-laws of CEF, i. e., until the next annual meeting of the stockholders of CEF or until his successor shall have been elected and qualified.

2. As of February 17, 1971 plaintiff was the beneficial and record owner of 24,225 common shares of CEF. Said shares were purchased

and acquired by plaintiff prior to a two for one split. On February 24, 1971, Frank caused the purchase by CEF of plaintiff's CEF shares at book value for a total price of $356,592. Said purchase by CEF and sale by plaintiff was pursuant to a plan conceived and carried to consummation by Frank and those under his domination and control (including officers and directors of CEF and CEF itself). The actions, statements and documents taken and made in pursuance thereof were false and misleading and relied on by plaintiff and constituted a deceptive device in that there was failure of the defendants to disclose to plaintiff:

a. that there was to be a public offering through use of the United States mails and facilities of interstate commerce of a large amount of the common shares of CEF then owned by Frank and the stockholders of CEF, and that there were negotiations for and firm agreements made in connection with said public offering, the selling price to the public being approximately double the price per share received by plaintiff for his CEF shares;

b. that CEF was to commence for the first time the payment of cash dividends on its common stock and that such dividend would be paid on or about April 30, 1971. That dividend was in the amount of 7½ cents per share;

c. that a two for one stock split of CEF shares was to be declared and subsequently was declared on April 23, 1971;

d. that plaintiff's removal as a Director and Chairman of the Board of Directors of CEF was unlawful; and

e. that the CEF shares, prior to the sale by plaintiff to CEF, should have been registered pursuant to the provisions of the Securities Act of 1933 (15 U.S.C. § 77a et seq.).

3. The omission to state the material facts alleged above which facts were necessary to be stated in connection with the sale and purchase of plaintiff's CEF shares above set forth, constitutes a violation by defendants of § 10(b) of the Securities Exchange Act of 1934 and of Rule 10b–5 of the Rules and Regulations promulgated pursuant to said Act.

4. On or about October 15, 1971, Frank and the other shareholders of CEF sold 150,000 of their CEF shares through a public offering at a price approximately twice that which CEF had paid to plaintiff for the purchase of his shares. The negotiations leading to such offering and sale to the public and the actual offering and sale were through the use of the United States mails and other facilities of interstate commerce.

5. Demand upon the defendants for return of his shares and for other relief was made by plaintiff in a letter dated July 15, 1971.

6. For the above violations the plaintiff seeks:

a. that the sale of 24,225 shares of CEF common stock (prior to the two for one split) to CEF to be rescinded and held for naught;

b. that, in the alternative, judgment for damages be awarded plaintiff and assessed against the defendants, jointly and severally; and

c. that this Court grant such other and further relief as is deemed just in the premises and that the plaintiff have his costs expended herein.

The defendants, in support of their motion for judgment on the pleadings, contend that:

1. The plaintiff Blackett has no claim under the Federal Securities Laws.

2. Plaintiff Blackett's Stock Purchase Agreement was valid and binding and he has released any claim to the contrary.

The plaintiff, in opposition to the instant motion, contends that:

1. The removal of the plaintiff as a Director of CEF was wrongful.

2. The Stock Purchase Agreement of December 15, 1969 is invalid.

3. The 1971 sale of plaintiff's CEF stock is unlawful.

It is the opinion of this Court after carefully examining the relevant pleadings that the defendant has failed to adequately state a cause of action over which this Court has jurisdiction.

This is an example of a trend of cases in which the invocation of federal securities laws is wholly inappropriate and wide of the Congressional mark. See Ryan v. J. Walter Thompson Company, 453 F.2d 444 (2nd Cir. 1971), cert. denied, 406 U.S. 907, 92 S.Ct. 1611, 31 L. Ed.2d 817 (1972). The vice of the instant complaint is that the plaintiff has engrafted upon a state cause of action a misplaced federal securities law claim which, but for that inappropriate federal gloss, would have been litigated in a local state court.

In appraising the propriety of the instant action it is important to be mindful of the following facts. The defendant CEF is a Delaware corporation engaged in the advertising business, with its corporate offices in Chicago, Illinois.[1] The defendant Frank is the Chairman of the Executive Committee and Chief Executive of CEF.[2] The plaintiff has not alleged any diversity of citizenship or other basis for federal jurisdiction except a putative violation of federal securities laws.

On December 15, 1969, Blackett and CEF, signed a written agreement applicable to all stock of CEF "now owned or hereafter acquired by Blackett" which provided in paragraph 2 thereof that:

"If the Stockholder shall die while employed by the Company, or if for any other reason his employment with the Company shall terminate (whether such termination shall be voluntary or with or without cause), the Company shall be required to purchase the Shares from the Stockholder, or his personal representative, at the price prescribed in paragraph 6, and the Stockholder, or his personal representatives, shall be required to sell the Shares to the Company at such price."[3]

The price prescribed in paragraph 6 of that agreement was essentially the book value of the shares on the termination date. The agreement also referred to the contingency that CEF might go public but stated, in paragraph 10 thereof, that its provisions would continue to apply until such time as a registration statement became effective or CEF was listed on a stock exchange.[4]

On February 17, 1971 the Board of Directors of CEF terminated Blackett's employment, by means of a resolution which stated as follows:

"RESOLVED, that the employment of Hill Blackett, Jr., by the company and his position as Chairman of the Board and as a member of the Board of Directors of this company are hereby terminated effective February 28, 1971."[5]

The by-laws of CEF have at all times provided that:

"Any officer or agent chosen or appointed by the Board of Directors may be removed without cause by the affirmative vote of a majority of the Board of Directors whenever, in the judgment of the Board, such removal shall be in the best interest of the corporation, but such removal shall be

---

1. See Paragraph 2 of the Complaint.

2. See Paragraph 3 of the Complaint.

3. See Paragraph 6 of the defendant's Answer to the Complaint.

4. See Exhibit A to defendants' Answer.

5. See Paragraph 4(a) of the defendants' Answer to the Complaint and the plaintiffs Reply to that Answer.

without prejudice to any contractual right of the individual so removed." [6]

On February 24, 1971 in accordance with the terms of the stock purchase agreement between Blackett and CEF the defendant CEF paid the plaintiff Blackett $356,592 for the 24,255 shares of CEF stock then owned by Blackett.[7] Blackett and CEF both signed a memorandum acknowledging satisfaction of each other's obligations under the stock purchase agreement and granting mutual releases, Blackett specifically releasing CEF from "all obligations to him as employee, officer, director and stockholder." [8]

On July 15, 1971 Blackett by his attorney sent a letter to CEF and to Frank requesting that Blackett's sale of stock to CEF be rescinded on the ground that Blackett had made the sale without knowledge that CEF was preparing for a public sale of its stock, was intending to declare a regular dividend on its stock, and was intending to split its stock on a two for one basis.[9] CEF did declare a dividend on its stock on April 30, 1971 and had split its stock on a two for one basis on April 23, 1971.[10] No shares of CEF had been offered to the public as of July 15, 1971 nor had they been listed on a stock exchange or made subject to an effective registration statement, but such shares were subsequently offered to the public on or about October 15, 1971.[11] Blackett knew on February 17, 1971 that the possibility of a public offering had been discussed in the past, and as previously noted, his stock purchase agreement specifically referred to this contingency.[12]

## I. THE RELEVANT SECURITIES STATUTES AND THE PROBLEMS OF DISCLOSURE

The plaintiff in his complaint alleges that the defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful:

" . . . for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange —

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5, 17 C.F.R. § 240.10b–5, makes it unlawful for any person, directly or indirectly, by use of any of the jurisdictional means set forth in Section 10(b):

"(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

The keystone of the entire legislative scheme of the securities laws is

6. See Paragraph 4(d) of the defendants' Answer to the instant Complaint and the plaintiff's Reply to that Answer.

7. See Paragraph 7 of the Complaint.

8. See Paragraph 7(a) of the defendants' Answer to the Complaint and the plaintiff's Reply.

9. See Paragraph 10 of the Complaint.

10. See Paragraph 7 of the Complaint.

11. See Paragraph 9 of the Complaint.

12. See Paragraph 7(b) of the defendants' Answer to the Complaint and the plaintiff's Reply.

disclosure.[13] The emphasis on disclosure rests on two considerations. One relates to the proper function of federal government in regulating investment matters. Apart from the prevention of fraud and manipulation, the draftsmen of the 1933 and 1934 Acts viewed that responsibility as being primarily one of seeing to it that investors and speculators had access to enough information to enable them to arrive at their own rational decisions. The other, less direct, rests on the belief that appropriate publicity tends to deter questionable practices and to elevate standards of business conduct. The fundamental purpose of federal security legislation was to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry. SEC v. Capital Gains Research Bureau, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). The focus on disclosure reflects the insight gained by experience that without complete, accurate and intelligible information about a transaction investors cannot make intelligent investment decisions.

■ The spirit of disclosure as required by Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the General Rules and Regulations promulgated thereunder and Section 17 of the Securities Act of 1933 is flexible and the antifraud sections are remedial in nature, prophylactic in scope and should be liberally construed to encompass devices that are alien to the climate of fair dealings and full and adequate disclosure. Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); SEC v. Capital Gains Research Bureau, supra; Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970). These antifraud provisions have been liberally interpreted by the Courts in order to determine under all factual situations whether a material misrepresentation was made or omitted in connection with the sale of a security, and what might constitute such a material fact.

■■ The coverage of the antifraud sections is not limited to those devices or contrivances that were known at the time of enactment, but rather the sections are meant to reach parties employed in connection with purchase or sale of securities contrary to public interest or interest of investors. Herpich v. Wallace, supra. The antifraud sections prohibit all fraudulent schemes in connection with the purchase or sale of securities whether or not the artifice employed involves a garden-type variety of fraud or is a unique or subtle form of deception. Carroll v. First National Bank of Lincolnwood, 413 F.2d 353 (7th Cir. 1969), cert denied, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1969); Ferraioli v. Canter, 281 F.Supp. 354 (S. D.N.Y.1967); Opper v. Hancock Securities Corp., D. C., 250 F.Supp. 668, aff'd, 367 F.2d 157 (2nd Cir. 1966).

■ However, where a claim is made that is clearly beyond the scope of these statutes which are aimed at protecting stock investors from being fraudulently deceived by material misrepresentations [14] in the sale or purchase of stock, even the most flexible

---

13. See Knause, "A Reappraisal of the Role of Disclosure", 62 Mich.L.Rev. 607 (1964); F. Wheat, Disclosure to Investors (1969).

14. The test of "materiality" to be applied in connection with the antifraud sections is whether a reasonable man would attach importance to the fact not disclosed in determining his choice of action in the transactions in question. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S. Ct. 1456, 31 L.Ed.2d 741 (1972); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970); Roger v. Ilikon Corp., 361 F.2d 260 (1st Cir. 1966); SEC v. Texas Gulf Sulpher Co., 401 F.2d 833 (2nd Cir. 1968); Ross v. Licht, 263 F. Supp. 395 (S.D.N.Y.1967).

In addition to the responsibility for making disclosures of material facts is the implicit further responsibility of accomplishing this disclosure in a manner that results in the facts being clearly and intelligibly communicated and not obtusely or cryptically communicated. Feit v. Leasco Data Processing Equipment Corporation, 332 F.Supp. 544 (S.D.N.Y.1971).

reading will not legitimate that claim. See, e. g., Lanza v. Drexel & Co., 479 F. 2d 1277 (2nd Cir. 1973).

## II. THE PLAINTIFF IN THE INSTANT COMPLAINT HAS FAILED TO ADEQUATELY STATE A CLAIM OVER WHICH THIS COURT HAS JURISDICTION.

■ The essence of the plaintiff's claim is that at the time the defendants forced the plaintiff to sell his CEF stock pursuant to the 1969 Stock Purchase Agreement the defendants failed to properly disclose that the CEF shares should have been registered prior to the sale by plaintiff to CEF and there was going to be some time in the future a public offering of the stock, a dividend, and a stock split.[15] However, the sale of his stock by the plaintiff was in no way induced or caused by any alleged misrepresentations on the part of the defendants. The 1971 sale by the plaintiff was required by the provisions of the Stock Purchase Agreement which plaintiff admittedly signed on December 15, 1969. The sale provision of the Stock Purchase Agreement was triggered not by the plaintiff voluntarily being induced into selling his stock but by the fact that the plaintiff was terminated on February 17, 1971 as a corporate executive of CEF.

The plaintiff in the instant complaint has failed to adequately allege that the 1969 Stock Purchase Agreement was invalid and thus inoperative.[16]

The 1969 Stock Purchase Agreement appears to be valid on its face. Such agreements are apparently authorized by statute in Delaware, the state in which CEF is incorporated. See Delaware Corporation Law § 202 (1969). Numerous courts have recognized the validity of such agreements. Clayton v. James B. Clow & Sons, 327 F.2d 382 (7th Cir. 1964); Ryan v. J. Walter Thompson Company, 322 F.Supp 307 (S.D.N.Y. 1971), aff'd *supra;* Gifford v. Rich, 58 Ill.App.2d 405, 208 N.E.2d 47 (1965); Arentsen v. Sherman Towell Service Corp., 352 Ill. 327, 185 N.E. 822 (1933). Thus, presumably, the 1969 Stock Purchase Agreement between the plaintiff and the defendant CEF is valid.

Since the plaintiff was obligated by the 1969 Stock Purchase Agreement to sell his shares of CEF at the time of his termination, whatever he knew or did not know regarding CEF's plans to go public, issue a dividend and have a stock split was irrelevant. Clearly the plaintiff has not properly alleged, nor do the relevant pleadings support a conclusion, that the plaintiff was fraudulently induced into selling his shares of CEF by the material misrepresentation made by the defendants. In fact, the plaintiff apparently had no choice in the matter; he was obligated to sell his stock pursuant to the provision of the 1969 Stock Purchase Agreement as soon as his employer CEF had terminated his services.

The plaintiff may have a proper cause of action against the defendants for his

15. The plaintiff seeks in the complaint that the sale of the 24,225 shares of CEF common stock be rescinded and held for naught. It is clear from the prayer for relief and from the plaintiff's delineation of the "material" facts that the defendants failed to disclose that the transaction which is the subject matter of the instant complaint was the sale of the stock in February of 1971. Certainly, if the plaintiff sought to contest the 1969 Stock Purchase Agreement or any representations made by the defendants to the plaintiff at that time the plaintiff would have requested rescission of the Agreement and return of the purchase price of the stock in 1969. Since the plaintiff is not re-

questing rescission as to the 1969 purchase of stock but only as to the 1971 sale it is clear that any problems involved with the 1969 Stock Purchase Agreement are deemed to be contractual and *per se* not part of a putative federal securities violation.

16. The plaintiff in Paragraph 6 of his Reply states that the 1969 Stock Purchase Agreement is not "binding or enforceable in that it is violative of public policy and fails for want of consideration and is void." This allegation in light of the relevant case law is at best a conclusory contention and not well pleaded.

wrongful termination and the damages he suffered pursuant to that termination such as loss of employment and the forced sale of his CEF stock.

However, the plaintiff is not the average uninformed investor, but rather an officer of the corporation from which the disputed stock was issued. Further, it is clear that the instant dispute does not really arise out of any misrepresentation made in the sale or purchase of CEF stock but rather arises out of the termination of a corporate executive and the subsequent "involuntary contractual sale" of the corporate officer's stock.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 clearly were not intended nor can they be liberally interpreted to cover the instant dispute in which services of a corporate officer were terminated and subsequent thereto he was contractually forced to sell his stock to the corporation. If there is a legitimate dispute between the parties it essentially involves the contractual relationship between a corporation and its officer which is not a matter within the exclusive or primary jurisdiction of federal courts.[17]

The plaintiff has not alleged any other basis for federal jurisdiction, except the improper invocation of a putative violation of the federal securities law.

The plaintiff in the instant complaint has engrafted this misplaced federal securities law claim upon an apparent state cause of action which but for that inappropriate federal gloss, would have been litigated in a local state court. See Ryan v. J. Walter Thompson Company, *supra.* The instant action as it is presently framed cannot proceed in this Court because the plaintiff has failed to

present this Court with a controversy over which it has jurisdiction.

Accordingly, it is hereby ordered that the defendants' motion is granted and the cause is dismissed.

---

17. It is obvious that for any business to run effectively and efficiently, control over hiring and firing of corporate employees and officers should rest in the sound discretion of the corporate hierarchy. Courts have uniformly been hesitant to interfere with vital business functions. See Stevenot v. Norberg, 210 F.2d 615 (9th Cir. 1954). The plaintiff has failed to adequately allege that the instant dispute involves an actual violation of the federal securities law as opposed to the garden variety of corporate employer-employee contests which are more appropriately handled by the local state courts.