Richard F. COONS and Julian H. Robertson, Jr., Plaintiffs,

v.

KIDDER, PEABODY & CO., INC., Defendant.

No. 82 Civ. 734 (RLC).

United States District Court, S. D. New York.

May 26, 1982.

Orans, Elsen & Lupert, New York City, for plaintiffs; Sheldon Elsen, Leslie Lupert, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant; Marvin Schwartz, New York City, of counsel.

OPINION

ROBERT L. CARTER, District Judge.

Defendant Kidder, Peabody & Co., Inc. ("Kidder") moves to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1), (6), F.R. Civ.P., or, in the alternative, to stay this

action pending arbitration of plaintiffs' claims in accordance with Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. The complaint sets forth three causes of action, one for damages under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.-10b–5, promulgated thereunder, and two pendant state claims.

Richard F. Coons and Julian H. Robertson, Jr. are former employees and directors of Kidder. As Kidder executives, plaintiffs were offered the opportunity to purchase shares of its common stock. In order to hold voting stock in Kidder, a member of the New York Stock Exchange, plaintiffs had to become allied members of the Exchange. Kidder stock ownership was also subject to the provisions of its Certificate of Incorporation which granted defendant the right and option to purchase all shares of stock upon the owner's resignation or retirement from the corporation. Certificate of Incorporation, Article 6 § 1(f). At different times in 1979, plaintiffs left Kidder to pursue other business opportunities. Between February 6, 1979, and February 4, 1982, defendant exercised its right to purchase the stock owned by Coons and Robertson. There were seven separate and distinct transactions, five involving Coons, all but one of which occurred after the owner left Kidder's employ.

Plaintiffs allege that through material misrepresentations and omissions defendant defrauded them of the true value of their holdings. In essence, plaintiffs claim that Kidder knowingly failed to include in the valuation of their shares the fair market value of oil and gas reserves and real estate owned by two different Kidder subsidiaries. The allegedly fraudulent scheme was multifaceted: first, Kidder allegedly violated its Certificate of Incorporation by incorrectly computing its aggregate net book value; next, by allegedly fraudulent acts, it amended another provision of its Certificate of Incorporation which had required Kidder to value its assets according to their net worth in the event of liquidation by substituting a net book value formula; and, finally, Kidder provided Coons, before his last stock sale, with a memorandum which plaintiffs allege was misleading in several respects. Thus, plaintiffs claim to have been cheated out of the full benefit of their original bargain by subsequent amendment of the valuation procedure and to have been deceived about the true effect of that amendment, and the actual extent of Kidder's worth, throughout the time between the amendment and their final stock sales.

These alleged deceptions form the crux of plaintiffs' 10(b) claim. Section 10(b) prohibits the use of "any manipulative or deceptive device" "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). The devices prohibited by Rule 10b–5 include untrue statements or omissions of material fact and schemes to defraud. 17 C.F.R. § 240.10b–5(a), (b). Defendant asserts that, assuming there were misrepresentations, plaintiffs cannot satisfy the "in connection with" requirement, nor demonstrate that the misstatements and omissions were material. Because plaintiffs were obliged to sell their shares to Kidder, defendant argues, they are unable to show a causal connection between the alleged misrepresentations and their securities transactions.

While "[c]ausation in fact is an essential element of a private cause of action for securities fraud under § 10(b) and Rule 10b–5," the source of the requirement is unclear. *St. Louis Union Trust Company v. Merrill Lynch, Pierce, Fenner & Smith Incorporated*, 562 F.2d 1040, 1048 (8th Cir. 1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978). The requirement that there be "a causal connection between a defendant's misstatements or omissions and the plaintiff's purchase [or sale]" has been attributed to the "in connection with" language. *Troyer v. Karcagi*, 476 F.Supp. 1142, 1148 (S.D.N.Y.1979) (Sweet, J.) (citing discussion of legislative purpose in *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860 (2d Cir. 1968)). More often, however, causation has been linked to the materiality requirement of Rule 10b–5 or the related concepts of reliance or transaction

causation. *See, e.g., St. Louis Union Trust Company, supra* at 1048 & n.11; *Schlick v. Penn-Dixie Cement Corporation*, 507 F.2d 374, 380 & n.11 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Kerrigan v. Merrill Lynch, Pierce, Fenner & Smith, Incorporated*, 450 F.Supp. 639, 643 (S.D.N.Y.1978) (Goettel, J.). We believe the latter to be a more accurate statement of the roots of the causation requirement.

The "in connection with" language is not rigid enough to support a causation requirement. That clause is to be flexibly applied. *Brown v. Ivie*, 661 F.2d 62, 65 (5th Cir. 1981); *Lewis v. Marine Midland Grace Trust Company of New York*, 63 F.R.D. 39, 47 (S.D.N.Y.1973) (Palmieri, J.). Thus, although plaintiffs must show "a nexus between the defendant's fraud and the securities 'sale,'" they need not establish a close relationship but only that the deceptive practices touched the sale. *Brown, supra* at 65; *see also Superintendent of Insurance of the State of New York v. Bankers Life and Casualty Company*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). The fraudulent scheme alleged by plaintiffs touched their stock transfers insofar as it impacted upon the price received.

Plaintiffs can find little solace in their satisfaction of the "in connection with" criterion, however, for they still must demonstrate a causal connection between their sales and the alleged deceit. A formidable barrier may frustrate plaintiffs' attempt to meet this burden, for "[i]t is well-established that a purchasing party's misrepresentations or omissions are irrelevant where the selling party is obliged to sell its shares." *Standard Metals Corporation v. Tomlin*, 503 F.Supp. 586, 600 (S.D.N.Y.1980) (Motley, J.). When a stockholder is bound to sell his stock by a valid option agreement, whatever he knew or did not know about the corporation is totally irrelevant to the decision to sell. *See The Toledo Trust Company v. Nye*, 588 F.2d 202, 208 (6th Cir. 1978); *St. Louis Union Trust Company, supra* at 1049; *Ryan v. J. Walter Thompson Company*, 322 F.Supp. 307, 313 (S.D.N.Y.) (Wyatt, J.), *aff'd* 453 F.2d 444 (2d Cir. 1971), *cert. denied*, 406 U.S. 907, 92 S.Ct. 1611, 31 L.Ed.2d 817 (1972).

Plaintiffs seek to distinguish the above cases in several ways. First, they argue that *Ryan* and its progeny are inapposite because plaintiffs in those cases could not control either the occurrence of the sale *or* the price to be received. The dual nature of restrictive options was noted in *Falls v. Fickling*, 621 F.2d 1362, 1367 (5th Cir. 1980), which found distinguishable a situation where "although the fact of the sale may have been beyond appellant's power to change, he unquestionably might have affected its price." *Id.* Relying on this language and on *Bank v. Fleisher*, 419 F.Supp. 1243 (D.Neb.1976), plaintiffs assert that § 10(b) and Rule 10b–5 "are violated if the book value of stock is fraudulently understated, even if plaintiff was obligated to sell at a particular time under an option agreement." Plaintiffs' Memorandum of Law at 39.

*Falls* and *Bank* are not conducive to so broad a reading.[1] In the former, plaintiff's control over the sales price was derived from his *de facto* control over the sale itself. Plaintiff's stock had been seized pursuant to a prior judgment and was scheduled for a sheriff's sale, at which plaintiff was prepared to bid and ensure that the shares would bring a fair price. *Falls, supra* at 1363–4. Before the sale, however, the parties negotiated a settlement under which defendants agreed to bid $4.50 per share and plaintiff promised to accede to the sale. *Id.* at 1364. After ruling that

---

1. In *Bank*, the court concluded that a valid exercise of a stock option "cannot predicate liability under Section 10(b) and Rule 10b–5," but went on to deny summary judgment for defendant because plaintiff alleged that defendant miscalculated the book value of her stock. *Id.* at 1251. The court did not explain how the book value could be a material fact in dispute in light of its holding that there was no possible § 10(b) liability. It seems, however, that defendant's motion was denied properly due to plaintiff's allegation that the option itself was incorrectly exercised. *Id.* Due to the ambiguity of the court's holdings, the absence of any support for its comment about book value and the presence of a valid alternative ground for decision, *Bank* cannot be viewed as supportive of plaintiffs' argument.

plaintiff's acts constituted a sale for the purpose of § 10(b), *id.* at 1365, the court distinguished *St. Louis Union Trust Company, supra,* on the grounds that "appellant might have decided to purchase the stock for himself" and that he "alleged that he would not have sold his stock at the sheriff's sale if he had known of the" fraudulently concealed facts. *Id.* at 1367. Unlike Falls, Coons and Robertson had no choice but to dispose of their stock,[2] and therefore, the rationale of *St. Louis Union Trust Company, supra,* applies. *See id.* at 1050 n.15 ("The point we wish to emphasize is that plaintiffs could have done nothing to block the sale of the stock").

A review of plaintiffs' complaint and the affidavits in opposition to the instant motion reveals another infirmity in their position. At no time do the plaintiffs allege that they would not have, or *might* not have, resigned from Kidder, thereby activating the stock's repurchase, if not for defendant's alleged misrepresentations and omissions. Rather, plaintiffs claim only that the supposed fraud made it impossible for them to reach informed decisions about the *value* of their stock, *see* Complaint ¶ 35; Coons affidavit ¶ 24, and resulted in their receiving an artificially reduced amount in their various transactions with Kidder. Coons affidavit ¶ 28. On their face, these allegations fail to satisfy the causation element of materiality under § 10(b) because they never link the alleged deception with

plaintiffs' decision to sell their stock (decision to leave Kidder's employ). *Compare Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532, 537 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976) (distinguishing *Ryan* because "[t]he complaint alleges that Ayres could and would have elected not to retire and not to sell his stock" had he known about defendant's plans).[3]

Plaintiffs also attempt to avoid the impact of *Ryan* and its progeny by reframing the materiality inquiry. They rely upon *Goldberg v. Meridor,* 567 F.2d 209 (2d Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978) and *Schlick, supra,* for the proposition that causation is demonstrated sufficiently when a complaint alleges that plaintiffs would have had remedies available had they known the facts they claim were concealed. *Goldberg* and *Schlick,* however, stand only for the proposition that transaction causation standards should be relaxed in derivative actions on behalf of public corporations challenging a merger or other transactions adversely affecting minority shareholders. *See Kerrigan, supra* at 644. Both *Goldberg, supra* at 219–21 and *Schlick, supra* at 382–3, stressed the uniqueness of such proxy situations. One crucial difference between the merger cases and the instant lawsuit is that in the former the deception is directed at persons deliberating about the sale of securities, while in this case there is no claim that the

---

**2.** Plaintiffs concede that "defendant has the right and option to purchase all shares of its stock from any shareholder whenever its board of directors" so decides. Complaint ¶ 10. Retirement from the corporation is an event which triggers the purchase option. Certificate of Incorporation, Article 6 § 1(f). Coons suggests, however, that Kidder's issuance of a disclosure memorandum prior to his final sale of stock refuted the notion that he was forced to sell upon defendant's demand. Coons affidavit ¶ 19. Referring to the phrase "[i]f ... you wish to proceed with your proposed sale" in the *memorandum's cover letter* and the word "accept" in the certificate for Coons' signature, plaintiffs' question whether this is a forced sale situation. The court will not adopt plaintiffs' interpretation. Six of their seven sales occurred without regard to the disclosure memorandum or any other *document indicating that* the purchases were not mandatory. The memorandum, moreover, was not designed with

only Coons in mind, but was sent to all stockholders considering "year end" transactions in early 1981. Many, or most, of these prospective purchasers and sellers may not have been in Coons' position of being forced to sell, and therefore, language connoting choice, addressed to those individuals, will not offset plaintiffs' clear obligation *to sell.*

**3.** Although *Ayres* is not on point due to plaintiffs' failure to allege that disclosure would have altered their decisions to resign from Kidder, it should be noted that the *Ayres* exception from the general rule of *Ryan* is much in doubt. Both in this court, *Villada v. Merrill Lynch, Pierce, Fenner & Smith Incorporated,* 460 F.Supp. 1149, 1150 (S.D.N.Y.1978) (Knapp, J.), and in other circuits, *see, e.g., St. Louis Union Trust Company, supra* at 1053 n.18, the correctness of *Ayres* has been questioned.

alleged fraud was designed to, or did, effectuate a stock transaction. This latter element of causation, a given in the *Goldberg* and *Schlick* type situations, must be shown independently in forced sale cases. *See Kerrigan, supra* at 646. If plaintiffs could circumvent the causation requirement by speculating about state actions they might have pursued if not for the alleged misrepresentations, when such actions could effect the price but not the transfer of stock, § 10(b) would become a vehicle for transporting novel questions of state law to the federal courts. *See id.*

Given their inability to show that the deceptive practices alleged influenced their decision to sell their Kidder stock, plaintiffs have failed to state a claim under the federal securities laws. Thus, without reaching the question of the arbitrability of plaintiffs' claims, defendant's motion to dismiss is granted.

IT IS SO ORDERED.