Rosalind E. WONG, Plaintiff,

v.

THOMAS BROS. RESTAURANT CORP., et al., Defendants.

Robert H. BALDWIN, Plaintiff,

v.

THOMAS BROS. RESTAURANT CORP., et al., Defendants.

And Related Counterclaims.

Nos. CV 92–440 WJR (CTx), CV 92–854 WJR (CTx).

United States District Court, C.D. California.

Jan. 4, 1994.

Randall J. Sherman, Stradling, Yocco, Carlson & Rauth, Newport Beach, CA, for plaintiffs and counter-defendants.

Jeffrey A. Robinson, Irvine, CA, for defendants and counter-claimants.

MEMORANDUM AND ORDER

REA, District Judge.

This action came on for hearing before the Court on October 18, 1993, the Honorable William J. Rea, United States District Judge, presiding, on a Motion for Summary Judgment of Defendants and Counterclaimants THOMAS BROTHERS RESTAURANT CORPORATION, THOMAS BROTHERS DEVELOPMENT CORPORATION, MARK C. THOMAS, and NICHOLAS THOMAS.

After considering all papers submitted in support of the motion, including but not limited to the moving parties' Notice of Motion and Motion, Memorandum of Points and Authorities, Declarations of Jeffrey E. Robinson, Mark C. Thomas, and Nicholas Thomas, and exhibits thereto, and after full consideration of all papers submitted in opposition to the motion, the arguments of counsel, and the entire file and record herein, the Court FINDS AND ORDERS AS FOLLOWS:

*I.  FACTUAL BACKGROUND*

Plaintiffs Rosalind E. Wong ("Wong") and Robert H. Baldwin ("Baldwin") were employed by Thomas Brothers Restaurant Corporation ("TBRC") and Thomas Brothers

Development Corporation ("TBDC"). Baldwin was President of TBDC from November 1986 to September 1988, and Wong was President of TBRC from late 1987 until September 1989. Baldwin and Wong also served as members of the Board of Directors of TBDC and TBRC during these time periods.

During the course of their employment, both Baldwin and Wong received shares of stock in TBRC and TBDC pursuant to the terms of written "stock restriction agreements." Baldwin was given a 10% interest in TBRC and TBDC, and Wong received a 5% interest in each company. Under both agreements governing the issuance of this stock, if the stock recipient's employment with defendants terminated, the defendant corporations would have 30 business days to exercise options to re-purchase the stock from the recipient. If the corporations failed to exercise their options, then defendant Mark Thomas was obligated to re-purchase the recipient's stock.

In August 1988, Baldwin informed the defendants that he wanted to pursue business opportunities elsewhere, and that he was therefore resigning from his employment. His resignation became effective on September 12, 1988. In May 1989, Wong took a maternity leave of absence for the birth of her child. In September 1989, however, she informed the defendants that she would not be returning to work. Both employees apparently departed from TBRC and TBDC on good terms.

After the plaintiffs resigned, a dispute arose between the parties concerning the price the defendants should pay in repurchasing the restricted stock. The parties initially tried to negotiate an acceptable value, but, when those efforts failed, the defendants engaged the firm Deloitte & Touche to perform an independent appraisal of the stock's value. Deloitte & Touche concluded that Baldwin's 10% interest in TBRC was worth $32,000 and his 10% interest in TBDC was worth $97,000. The appraisers similarly valued Wong's 5% interest in TBRC at $16,000 and her 5% interest in TBDC at $48,500.

Although these amounts were tendered, neither plaintiff accepted payment.

Plaintiffs contend that Deloitte & Touche's figures do not accurately reflect the value of their stock because these figures are based primarily on false information given by the defendants. Plaintiffs allege that, among other things, the defendants told the appraisers that restaurant sales were expected to increase by only 4.5% per year, when in fact the defendants' internal projections predicted growth of 60–70%, and the corporations' actual growth over that period was 25%. The plaintiffs also allege that the defendants owned several assets of which they failed to advise the appraisers.

Baldwin and Wong originally commenced their lawsuits regarding this alleged fraud in Orange County Superior Court. In his state action, Baldwin alleged claims for breach of contract, fraud, negligent misrepresentation and breach of fiduciary duty, seeking both monetary damages and declaratory relief. Wong likewise asserted claims for breach of contract and breach of fiduciary duty, seeking similar relief. Although these cases remained in the state court for a period of time, plaintiffs dismissed the actions within days of trial—on the day of trial in Wong's case.[1]

Following dismissal of their state court actions, plaintiffs refiled nearly identical complaints in this Court. Plaintiffs' complaints (as amended after this Court partially granted two motions to dismiss) allege a single federal claim (violation of Securities Exchange Commission Rule 10b–5) and eight state law claims (violation of the California Corporations Code, breach of contract, fraud, negligent misrepresentation, breach of fiduciary duty, corporate dissolution, declaratory relief, and conversion). Federal jurisdiction over the state law claims is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367.

Defendants currently move the Court to summarily adjudicate the plaintiffs' claims on the grounds that (i) the present action cannot

---

1. Defendants speculate that these dismissals resulted from the fact that plaintiffs never designated any valuation experts as trial witness and that plaintiffs never obtained a valuation of the disputed shares.

properly be classified as a 10b–5 claim, and (ii) once the Court disposes of the linchpin federal claim, jurisdiction over the pendent state law claims disappears.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment may only be granted, however, where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987).

To survive the motion, the nonmoving party need only present evidence from which a jury might return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). At least some significant probative evidence tending to support the pleading must be produced. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The existence of a mere scintilla of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could *reasonably* find for the nonmovant. *Anderson,* 477 U.S. at 249, 252, 106 S.Ct. at 2510, 2512.

## III. DISCUSSION

Although plaintiffs allege numerous state law claims, federal jurisdiction in this matter is predicated solely upon the plaintiffs' ability to demonstrate a violation of SEC Rule 10b–5. Under Section 10(b) of the Securities Exchange Act of 1934, it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate." 15 U.S.C. § 78j. SEC Rule 10b–5 in turn specifically makes it unlawful

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. Plaintiffs bear the burden of proof on all elements of their Rule 10b–5 claim. *See Model Civil Jury Instr. for the Ninth Circuit* (1993) at 18.01.01; *Feldman v. Pioneer Petroleum, Inc.,* 813 F.2d 296, 301 (10th Cir.), *cert. denied,* 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987).

"In order to prevail in an action for securities fraud under § 10(b) and Rule 10b–5, a plaintiff must show some causal nexus between the defendant's wrongful conduct and his (the plaintiff's) loss." *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040, 1048 (8th Cir. 1977); *see McGonigle v. Combs,* 968 F.2d 810, 817 (9th Cir.1992). Although different courts take different approaches in applying the Rule 10b–5 causation requirement, "[c]ausation has been most often analyzed in terms of the Rule 10b–5 elements of materiality or reliance." *St. Louis Union Trust Co.,* 562 F.2d at 1048. The Ninth Circuit looks for causation in terms of both materiality *and* reliance:

To show a Rule 10b–5 violation, a private plaintiff must prove a "causal connection between a defendant's misrepresentation and [the] plaintiff's injury." The private plaintiff must also prove a proximate relationship between the plaintiff's injury and the purchase or sale of a security. Furthermore, a plaintiff must establish a con-

nection between the defendant's alleged misrepresentation and the security at issue. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1485–86 (9th Cir.1991) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988)) (other citations omitted); *see also McGonigle*, 968 F.2d at 817.

The Ninth Circuit essentially breaks this causation element of 10b–5 claims down into two sub-elements: *"transaction causation* (i.e., 'that the violations in question caused the plaintiff to engage in the transaction'), and *loss causation* (i.e., 'that the misrepresentations or omissions caused the harm')." *Levine*, 950 F.2d at 1486 n. 7 (citations omitted). In order to establish a Rule 10b–5 claim, a plaintiff must typically establish *both* types of causation. *Id.*

Plaintiffs have arguably demonstrated that a valid factual dispute exists as to the issue of loss causation. There is apparently no dispute, however, regarding the material facts underlying transaction causation in this matter. Defendants contend, and plaintiffs have not disputed, that the misrepresentations and omissions allegedly made by defendants during the stock valuation process in no way *induced* or *caused* the plaintiffs to originally enter into the employment agreements with the stock repurchase clauses. The plaintiffs' failure to establish a factual dispute regarding the essential element of transaction causation is sufficient to justify summary judgment under Rule 56: "there can be 'no genuine issue as to any material fact,' [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *see T.W. Elec. Serv.*, 809 F.2d at 630.

As their first line of defense, plaintiffs erroneously contend that they do not need to demonstrate transaction causation in this case. There are only two situations in which the causation requirement of a 10b–5 action will be relaxed, neither of which applies to the facts of this case. First, there is no need to show reliance—or transaction causation—where a "forced seller" situation exists. In *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir.1967), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), the plaintiff alleged that shareholders of his class of stock were harmed by a merger in which the board of directors fraudulently diverted proceeds to shareholders of another class of stock. The plaintiff had voted against a merger, but was compelled to sell his shares under a short-form merger statute because the required number of shareholders voted in favor of the merger. Under these circumstances, the Second Circuit found that a "sale" had in fact occurred, *see* 374 F.2d at 635, and that "whatever need there may be to show reliance in other situations, we regard it as unnecessary in the limited instance when no volitional act is required and the result of a forced sale is exactly that intended by the wrongdoer." *Id.* at 635.

Although plaintiffs would have the Court believe otherwise, their case bears little resemblance to a forced seller situation. Plaintiffs committed at least two volitional acts: (i) they voluntarily entered into the restrictive agreements that provided for repurchase of their stock when they retired; and (ii) they voluntarily decided to resign. *See, e.g., St. Louis Union Trust Co.*, 562 F.2d at 1049. There are no allegations in the plaintiffs' complaint or otherwise that either decision was fraudulently induced by the defendants. Any misrepresentations that occurred after the plaintiffs made all of the decisions necessary to invoke the mandatory sale provisions of their contracts cannot be the basis for a 10b–5 violation. *See, e.g., Levine*, 950 F.2d at 1487 ("[C]onduct actionable under Rule 10b–5 must occur before investors purchase securities.").

The second exception occurs where a particular plaintiff cannot claim to have been personally misled by a misrepresentation, but that plaintiff can demonstrate that *other* investors did rely on the defendant's omissions or misrepresentations. In *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975), the Ninth Circuit held that reliance on the part of individual members of a class of investors need not be shown where a company's "financial reporting failed to disclose the need for reserves, conditions reflecting on the value of

the inventory, or other facts necessary ·to make the reported figures not misleading," 524 F.2d at 905, or where deceptively inflated stock is traded on an open market. *Id.* at 906. Again, this exception is of no help to the plaintiffs. There are no allegations or proof of any fraudulent statements or omissions being made to *anyone* prior to the plaintiffs' decisions to sign the restrictive stock agreements or to resign their positions. *See, e.g., Crane Co. v. Westinghouse Air Brake Co.,* 419 F.2d 787, 796 (2d Cir.1969) (" 'What must be shown is that there was deception which misled [other] stockholders and that this was in fact the cause of plaintiff's injury.' ") (quoting *Vine,* 374 F.2d at 635) (brackets in original).

Indeed, the Court finds it instructive that courts in other circuits have dismissed claims strikingly similar to plaintiffs' for failing to adequately demonstrate a 10b–5 violation. *See, e.g., St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040 (8th Cir.1977); *Ryan v. J. Walter Thompson Co.,* 453 F.2d 444 (2d Cir.1971); *Coons v. Kidder, Peabody & Co.,* 539 F.Supp. 1145 (S.D.N.Y.1982); *Blackett v. Clinton E. Frank, Inc.,* 379 F.Supp. 941, 947 (N.D.Ill. 1974).

In the case at bar, plaintiffs have not alleged nor have they offered any proof that some misrepresentation or omission on the part of the defendants induced them to sign the stock restriction agreements or to resign. Because these are the triggering events of the "sale" of the securities in question, transactional causation (reliance by the plaintiffs on the defendants' misrepresentations or omissions) has not been established. Having failed to show such reliance—or the "materiality" of the misrepresentations, as some courts call it—plaintiffs have failed to demonstrate a prima facie case of a 10b–5 violation. *See Levine,* 950 F.2d at 1487; *St. Louis Union Trust Co.,* 562 F.2d at 1049; *Ryan,* 453 F.2d at 447; *Coons,* 539 F.Supp. at 1148; *Blackett,* 379 F.Supp. at 947.

Moreover, because plaintiffs' 10b–5 claim is their sole justification for federal jurisdiction over eight pendent state law claims, these remaining state law claims should be dismissed for want of jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("The district court[ ] may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction.").

The Court therefore finds that the moving parties are entitled to judgment on their first cause of action as a matter of law pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, and that the remainder of plaintiffs' complaint should be dismissed without prejudice.

IT IS SO ORDERED.