**Gabriel VILLADA, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, Defendant.**

**No. 77 Civ. 5852.**

United States District Court, S. D. New York.

Nov. 20, 1978.

Grandefeld & Goodman, New York City, for plaintiff; Dominick J. Dorata, New York City, of counsel.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant; Roger J. Hawke, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

In this action, brought under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities Exchange Commission, defendant moves pursuant to F.R.C.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment pursuant to Rule 56(b).

Plaintiff's allegations, which must be accepted for the purpose of this motion, are as follows: Plaintiff was employed by defendant Merrill Lynch in several of its overseas offices from January, 1957 to March 8, 1971, at which time he resigned to accept a post with the firm of Bache & Co. During his employment, plaintiff purchased a total of 2,000 shares of Merrill Lynch non-voting common stock. When plaintiff bought the shares in question, he signed a stock pur-

chase agreement under which Merrill Lynch had the option to repurchase all or part of plaintiff's stock at any time regardless of whether the stockholder-employee continued in Merrill Lynch's employ. It had, however, been the company's unvaried practice to exercise that right only upon termination of employment. Before March, 1970 the rules of the New York Stock Exchange prohibited defendant and other brokers from offering stock to the public but allowed officers and employees of such firms to purchase stock privately. Those rules were then revised, allowing Merrill Lynch to make a public offering of stock.

According to plaintiff, Merrill Lynch began to prepare for a public offering in July, 1970 by establishing a "Going Public Task Force," known only to top management personnel, to study the matter. Between that time and the date of plaintiff's resignation, articles which referred to the possibility of a public offering by Merrill Lynch appeared in several newspapers and magazines. Plaintiff states, however, that he was not aware of these publications before he resigned, as he was employed entirely in Paris, and that, in any event, such articles merely contained general statements that Merrill Lynch might go public at some time in the future, giving no indication that the move was imminent.

On March 8, having previously accepted a position with Bache & Co., plaintiff resigned from Merrill Lynch. The latter tried to dissuade him from resigning, but made no mention of its intention to go public. One week later, on March 15, plaintiff tendered his shares at $267.08 a share, its book value. Eight days after that, on March 23, Merrill Lynch advised plaintiff that it was exercising its option to buy the shares at the same book value; and plaintiff was ultimately paid a total of $53,416.00 for his 200 shares. Subsequently on April 23 Merrill Lynch, having obtained stockholder approval, filed an SEC registration statement declaring a 3 for 1 stock split, and fixing a price of $28.00 on each of the resulting shares (which would have given plaintiff's original holdings a value of $168,000). On June 23, 1971 a successful public offering was made on that basis. Plaintiff's complaint seeks the difference between what he actually received for his stock and what he could have received had he waited for the public offering, plus interest and punitive damages.

Recognizing that Merrill Lynch had the absolute right to reclaim his stock when it did at the price it paid regardless of whether he had resigned, plaintiff urges that the company's past practices made it highly unlikely that it would have done so. Plaintiff therefore contends that defendant defrauded him by not giving him information which might have induced him to delay the day when he forsook Merrill Lynch for Bache.

The only appellate decision squarely in point supports plaintiff's contention, *Ayres v. Merrill Lynch, Pierce, Fenner & Smith* (3d Cir. 1976) 538 F.2d 532. However, we respectfully decline to follow that decision. We are more persuaded by Judge Stern's dissenting opinion in that case.

It seems to us an extraordinary proposition that a defendant can be charged with *fraud* by its mere neglect to tell a plaintiff facts which might have enabled the plaintiff to persuade defendant to refrain from taking certain action concededly within its own absolute discretion. Such a contention seems particularly absurd on the facts before us. Let us suppose that Merrill Lynch, having failed to dissuade plaintiff from deserting it for Bache, had told him "Well, you'll be sorry because we're going public and the stock you hold will become much more valuable;" and that plaintiff had responded "O.K. in that case I'll wait around until you go public and then desert you for Bache." It seems to us that Merrill Lynch would have been well within its rights if it had—and probably would have—exercised its option forthwith and told plaintiff to find such solace as he could in whatever employee stock option plan Bache might offer him.

We accordingly grant defendant's motion to dismiss the complaint.

SO ORDERED.